**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LINDENWOOD FEMALE COLLEGE d/b/a LINDENWOOD UNIVERSITY, individually and on behalf of all others similarly situated, | ) ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 4:20-cv-01503 |
| v. | ) ) | Hon. Henry E. Autrey |
| ZURICH AMERICAN INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) | |

---

**DEFENDANT ZURICH AMERICAN INSURANCE COMPANY'S**
**MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

---

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ..................................................................................ii

INTRODUCTION ............................................................................................ 1

BACKGROUND ............................................................................................. 3

    I.    Lindenwood's Allegations ................................................................. 3

    II.    Lindenwood's Property-Insurance Policy........................................... 4

LEGAL STANDARDS ..................................................................................... 5

ARGUMENT .................................................................................................. 6

    I.    Lindenwood Has Not Stated And Cannot State A Claim For Breach Of Contract.......................................................................................... 6

        A.    Lindenwood Fails To Allege Direct Physical Loss Of Or Damage To Property ................................................................ 6

            1.    The COVID-19 Orders Did Not Cause Direct Physical Loss Of Or Damage To Property As A Matter of Law ......................... 9

            2.    The "Threat" Or "Presence" Of The Coronavirus Does Not Constitute Direct Physical Loss Of Or Damage To Property As A Matter of Law ..................................................... 10

        B.    "Civil Or Military Authority" Coverage Also Does Not Apply ............. 19

        C.    The Contamination Exclusion Excludes Coverage................................. 21

        D.    The Louisiana Endorsement Does Not Apply To Lindenwood's Covered Properties in Missouri and Illinois ............................................. 25

    II.    Lindenwood's "Declaratory Judgment" Claim Must Be Dismissed ................. 27

    III.    Plaintiffs' Claims Should Be Dismissed With Prejudice.................................... 28

CONCLUSION................................................................................................ 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Int'l Spec. Lines Ins. Co. v. Cont'l Cas. Ins. Co.*,
  142 Cal. App. 4th 1342 (2006) ..............................................................................26

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................................ *passim*

*ATCM Optical, Inc. v. Twin City Fire Ins. Co.*,
  2021 WL 131282 (E.D. Pa. Jan. 14, 2021) ..............................................................13

*B Street Grill & Bar LLC v. Cincinnati Ins. Co.*,
  No. CV-20-01326-PHX-SMB (D. Ariz. Mar. 8, 2021)............................................13

*Ballas Nails & Spa, LLC v. Travelers Cas. Ins. Co. of Am.*,
  2021 WL 37984 (E.D. Mo. Jan. 5, 2021) ....................................................... *passim*

*BBMS, LLC v. Cont'l Cas. Co.*,
  2020 WL 7260035 (W.D. Mo. Nov. 30, 2020)............................................... *passim*

*Black & Veatch Corp. v. Wellington Syndicate*,
  302 S.W.3d 114 (Mo. Ct. App. 2009).....................................................................26

*Blue Springs Dental Care, LLC v. Owners Ins. Co.*,
  2020 WL 5637963 (W.D. Mo. Sept. 21, 2020) ......................................................14

*Bluegrass, LLC. v. State Auto. Mut. Ins. Co.*,
  2021 WL 42050 (S.D.W. Va. Jan. 5, 2021)............................................................14

*BMW of N. Am., Inc. v. Gore*,
  517 U.S. 559 (1996).................................................................................................27

*Boxed Foods Co. v. Cal. Cap. Ins. Co.*,
  2020 WL 6271021 (N.D. Cal. Oct. 26, 2020)..........................................................24

*Brunswick Panini's, LLC v. Zurich Am. Ins. Co.*,
  2021 WL 663675 (N.D. Ohio Feb. 19, 2021) ............................................................7

*Café La Trova LLC v. Aspen Specialty Ins. Co.*,
  2021 WL 602585 (S.D. Fla. Feb. 16, 2021) ....................................................10, 13

*Cafe Plaza de Mesilla, Inc. v. Cont'l Cas. Co.*,
  2021 WL 601880 (D.N.M. Feb. 16, 2021) .............................................................15

*Carrot Love, LLC v. Aspen Specialty Ins. Co.*,
  2021 WL 124416 (S.D. Fla. Jan. 13, 2021) .......................................................7, 11

## TABLE OF AUTHORITIES — continued

**Page(s)**

*Circus Circus LV, LP v. AIG Specialty Ins. Co.*,
    2021 WL 769660 (D. Nev. Feb. 26, 2021) ...............................................................15

*Cordry v. Vanderbilt Mortg. & Fin., Inc.*,
    445 F.3d 1106 (8th Cir. 2006) ............................................................................7

*Crescent Plaza Hotel Owner L.P. v. Zurich Am. Ins. Co.*,
    2021 WL 633356 (N.D. Ill. Feb. 18, 2021) ......................................................7, 15

*Digital Age Mkt'g Grp., Inc. v. Sentinel Ins. Co.*,
    2021 WL 80535 (S.D. Fla. Jan. 8, 2021) ............................................................11

*Eichholz v. Secura Supreme Ins. Co.*,
    735 F.3d 822 (8th Cir. 2013) ..............................................................................6

*Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc.*,
    2020 WL 5642483 (N.D. Cal. Sept. 22, 2020) ................................................9, 23

*Fremont Reorganizing Corp. v. Nat'l Union Fire Ins. Co.*,
    2012 WL 13015133 (C.D. Cal. Jan. 9, 2012) ........................................................19

*FTC v. Travelers Health Ass'n*,
    362 U.S. 293 (1960)........................................................................................27

*Gavrilides Mgmt. Co. v. Mich. Ins. Co.*,
    No. 20-258-CB (Mich. Cir. Ct. July 1, 2020) .......................................................9

*Gilreath Family & Cosmetic Dentistry, Inc. v. Cincinnati Ins. Co.*,
    2021 WL 778728, at *6 (N.D. Ga. Mar. 1, 2021) ..................................................15

*Harvest Moon Distribs., LLC v. S.-Owners Ins. Co.*,
    2020 WL 6018918 (M.D. Fla. Oct. 9, 2020) .........................................................10

*Henry's La. Grill, Inc. v. Allied Ins. Co. of Am.*,
    2020 WL 5938755 (N.D. Ga. Oct. 6, 2020) ..........................................................9

*Indep. Rest. Grp. v. Certain Underwriters at Lloyd's*,
    2021 WL 131339 (E.D. Pa. Jan. 14, 2021).........................................................13

*Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's*,
    2020 WL 5791583 (M.D. Fla. Sept. 28, 2020) .....................................................13

*Johnson* v. *Hartford Fin. Servs. Grp., Inc.*,
    2021 WL 37573 (N.D. Ga. Jan. 4, 2021)............................................................12

*K.C. Hopps, Ltd. v. Cincinnati Ins. Co.*,
    2020 WL 6483108 (W.D. Mo. Aug. 12, 2020).......................................................14

**TABLE OF AUTHORITIES — continued**

Page(s)

*Kahn v. Pa. Nat'l Mut. Cas. Ins. Co.*,
2021 WL 422607 (M.D. Pa. Feb. 8, 2021) ............................................................7

*Kamp v. Empire Fire & Marine Ins. Co.*,
2013 WL 310357 (D.S.C. Jan. 25, 2013).............................................................26

*Malaube, LLC v. Greenwich Ins. Co.*,
2020 WL 5051581 (S.D. Fla. Aug. 26, 2020)..................................................13, 18

*Mama Jo's, Inc. v. Sparta Ins. Co.*,
823 F. App'x 868 (11th Cir. 2020) ......................................................................13

*Mena Catering, Inc. v. Scottsdale Ins. Co.*,
2021 WL 86777 (S.D. Fla. Jan. 11, 2021) ...........................................................11

*Menard v. Gibson Applied Tech. & Eng'g, Inc.*,
2017 WL 6610466 (E.D. La. Dec. 27, 2017).......................................................26

*Mendota Ins. Co. v. Lawson*,
456 S.W.3d 898 (Mo. Ct. App. 2015)................................................................6, 26

*Michael Cetta, Inc. v. Admiral Indem. Co.*,
2020 WL 7321405 (S.D.N.Y. Dec. 11, 2020) ........................................................8

*Moody v. Hartford Fin. Grp., Inc.*,
2021 WL 135897 (E.D. Pa. Jan. 14, 2021).................................................11, 13, 18

*Mortar & Pestle Corp. v. Atain Specialty Ins. Co.*,
2020 WL 7495180 (N.D. Cal. Dec. 21, 2020)......................................................10

*Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*,
2020 WL 5525171 (N.D. Cal. Sept. 14, 2020) ......................................................18

*NeCo, Inc. v. Owners Ins. Co.*,
2021 WL 601501 (W.D. Mo. Feb. 16, 2021) ........................................................14

*Newchops Rest. Comcast LLC v. Admiral Indem. Co.*,
2020 WL 7395153 (E.D. Pa. Dec. 17, 2020)....................................................23, 24

*Not Home Alone, Inc. v. Phila. Indem. Ins. Co.*,
2011 WL 13214381 (E.D. Tex. Mar. 30, 2011) ....................................................19

*NTD I, LLC v. Alliant Asset Mgmt. Co.*,
2017 WL 605324 (E.D. Mo. Feb. 15, 2017)........................................................27

*O'Brien Sales & Mktg., Inc. v. Transp. Ins. Co.*,
2021 WL 105772 (N.D. Cal. Jan. 12, 2021) .........................................................13

**TABLE OF AUTHORITIES — continued**

**Page(s)**

*Pappy's Barber Shops, Inc. v. Farmers Grp.*, Inc.,
    2020 WL 5500221 (S.D. Cal. Sept. 11, 2020) ................................................................21, 28

*Pentair, Inc. v. Am. Guar. & Liab. Ins. Co.*,
    400 F.3d 613 (8th Cir. 2005) ................................................................7

*Phyllis Schlafly Revocable Tr. v. Cori*,
    2021 WL 65054 (E.D. Mo. Jan. 7, 2021) ................................................................17

*Port Auth. of NY & NJ v. Affiliated FM Ins. Co.*,
    311 F.3d 226 (3d Cir. 2002) ................................................................15, 16, 17

*Promotional Headwear Int'l v. Cincinnati Ins. Co.*,
    2020 WL 7078735 (D. Kan. Dec. 3, 2020) ................................................................12

*Prudential Prop. & Cas. Ins. Co. v. Lillard-Roberts*,
    2002 WL 31495830 (D. Or. June 18, 2002) ................................................................15, 16

*R.T.G. Furniture Corp. v. Hallmark Spec. Ins. Co.*,
    2021 WL 686864 (M.D. Fla. Jan. 22, 2021) ................................................................14

*Raymond H Nahmad DDS PA v. Hartford Cas. Ins. Co.*,
    2020 WL 6392841 (S.D. Fla. Nov. 2, 2020) ................................................................23

*Riverwalk Seafood Grill Inc. v. Travelers Cas. Ins. Co. of Am.*,
    2021 WL 81659 (N.D. Ill. Jan. 7, 2021) ................................................................3, 4, 5, 23

*Robert E. Levy, D.M.D, LLC v. Hartford Fin. Servs. Grp.*,
    2021 WL 598818 (E.D. Mo. Feb. 16, 2021) ................................................................ *passim*

*Sandy Point Dental, PC v. Cincinnati Ins. Co.*,
    2021 WL 83758 (N.D. Ill. Jan. 10, 2021) ................................................................11, 12, 21

*Santo's Italian Café LLC v. Acuity Ins. Co.*,
    2020 WL 7490095 (N.D. Ohio Dec. 21, 2020) ................................................................18

*SAS Int'l, Ltd. v. Gen. Star Indem. Co.*,
    2021 WL 664043 (D. Mass. Feb. 19, 2021) ................................................................15

*Seaton v. Shelter Mut. Ins. Co.*,
    574 S.W.3d 245 (Mo. 2019) ................................................................6

*Selane Prods., Inc. v. Cont'l Cas. Co.*,
    2021 WL 609257 (C.D. Cal. Feb. 8, 2021) ................................................................11, 24

*Soundview Cinemas Inc. v. Great Am. Ins. Grp.*,
    2021 WL 561854 (N.Y. Sup. Ct. Feb. 8, 2021) ................................................................8

**TABLE OF AUTHORITIES — continued**

**Page(s)**

*St. Paul Fire & Marine Ins. Co. v. Lippincott*,
    287 F.3d 703 (8th Cir. 2002) ...................................................................................6

*Steve Foley Cadillac, Inc. v. N.Y. Marin & Gen. Ins. Co.*,
    No. 2020-L-06774 (Ill. Cir. Ct. Feb. 19, 2021) ......................................................11

*Studio 417, Inc. v. Cincinnati Insurance Co.*,
    478 F. Supp. 3d 794 (W.D. Mo. 2020) ..............................................14, 15, 16, 17

*Tappo of Buffalo, LLC v. Erie Ins. Co.*,
    2020 WL 7867553 (W.D.N.Y. Dec. 29, 2020).........................................................8

*Terry Black's Barbeque, LLC v. State Auto. Mut. Ins. Co.*,
    2020 WL 7351246 (W.D. Tex. Dec. 14, 2020) ...............................................13, 21

*Tomars v. United Fin. Cas. Co.*,
    2015 WL 3772024 (D. Minn. June 17, 2015).........................................................26

*Torgerson Props., Inc. v. Cont'l Cas. Co.*,
    2021 WL 615416 (D. Minn. Feb. 17, 2021) ........................................................7, 9

*Town Kitchen LLC v. Certain Underwriters at Lloyd's*,
    2021 WL 768273 (S.D. Fla. Feb. 26, 2021) ..........................................................12

*Transit Cas. Co. v. Selective Ins. Co. of Se.*,
    137 F.3d 540 (8th Cir. 1998) .................................................................................27

*Trs. of Clayton Terrace Subdivision v. 6 Clayton Terrace, LLC*,
    585 S.W.3d 269 (Mo. 2019) ..................................................................................27

*Ultimate Hearing Sols. II, LLC v. Twin City Fire Ins. Co.*,
    2021 WL 131556 (E.D. Pa. Jan. 14, 2021) .............................................................7

*Uncork & Create LLC v. Cincinnati Ins. Co.*,
    2020 WL 6436948 (S.D.W. Va. Nov. 2, 2020) .........................................11, 12, 13

*Universal Image Prods., Inc. v. Fed. Ins. Co.*,
    475 F. App'x 569 (6th Cir. 2012) .........................................................................13

*Unmasked Mgmt., Inc. v. Century-Nat'l Ins. Co.*,
    2021 WL 242979 (S.D. Cal. Jan. 22, 2021).....................................................11, 13

*Vandelay Hosp. Grp. LP v. Cincinnati Ins. Co.*,
    2021 WL 462105 (N.D. Tex. Feb. 9, 2021).............................................................11

*Verveine Corp. v. Strathmore Ins. Co. & Comm. Ins. Agency, Inc.*,
    No. 2084CV01378 (Mass. Super Ct. Dec. 21, 2020) ............................................23

## TABLE OF AUTHORITIES — continued

**Page(s)**

*W. Coast Hotel Mgmt. v. Berkshire Hathaway Guard Ins. Cos.*,
  2020 WL 6440037 (C.D. Cal. Oct. 27, 2020) ...................................................................18, 24

*Water Sports Kauai, Inc. v. Fireman's Fund Ins. Co.*,
  2020 WL 6562332 (N.D. Cal. Nov. 9, 2020) .........................................................................11

*Westchester Surplus Lines Ins. Co. v. Interstate Underground Warehouse &*
  *Storage, Inc.*,
  946 F.3d 1008 (8th Cir. 2020) ................................................................................................6

*Western Fire Insurance Co. v. First Presbyterian Church*,
  437 P.2d 52, 55 (Colo. 1968) ...............................................................................1, 16, 17, 24

*Whiskey Flats Inc. v. Axis Ins. Co.*,
  2021 WL 534471 (E.D. Pa. Feb. 12, 2021) .....................................................................13, 18

*Whiskey River on Vintage, Inc. v. Ill. Cas. Co.*,
  2020 WL 7258575 (S.D. Iowa Nov. 30, 2020).......................................................................10

*Williams v. Emps Mut. Cas. Co.*,
  845 F.3d 891 (8th Cir. 2017) ................................................................................................13

*Zwillo V, Corp. v. Lexington Ins. Co.*,
  2020 WL 7137110 (W.D. Mo. Dec. 2, 2020) ............................................................... *passim*

**Statutes**

La. Rev. Stat. § 22:1311.............................................................................................................25

McCarran-Ferguson Act, 15 U.S.C. § 1012...............................................................................25

Mo. Code Regs. 20 § 500-1.100 ................................................................................................25

**Rules**

Fed. R. Civ. P. 12(b)(6)................................................................................................................5

Fed. R. Evid. 201(b).....................................................................................................................17

## INTRODUCTION

Plaintiff Lindenwood University seeks to stretch the plain language of an insurance policy covering *direct physical loss of or damage to property* to encompass purely economic losses associated with the COVID-19 pandemic and its related government closure orders. Courts across the country—nearly 190 and counting—have rejected similar claims.[1]  As courts have nearly uniformly concluded as a matter of law, COVID-19 damages human health, not property. Accordingly, even where policyholders like Lindenwood have alleged that the virus was present on the property, or that employees or patrons fell ill from the virus, this is simply not *direct physical loss or damage to property* as required to trigger coverage under a property-insurance policy like the one at issue here.  What is more, pleading presence of the virus on-site at Lindenwood's property runs headlong into the policy's contamination exclusion, which expressly bars coverage where, as here, the policyholder squarely asserts the actual presence of the "virus" on its premises. Lindenwood's claims suffer from these same fatal flaws, and more.

*First*, Missouri law, consistent with case law across the country, requires Lindenwood to show actual physical loss or destruction of property to trigger coverage under the policy.  For this reason, courts have rejected the argument that this core requirement is satisfied when an insured suffers purely pecuniary losses, without any accompanying "physical event or force on," or alteration to, the insured property. *BBMS, LLC v. Cont'l Cas. Co.*, 2020 WL 7260035, at *5 (W.D. Mo. Nov. 30, 2020) (Phillips, C.J.) ("[L]oss of use alone is insufficient to satisfy" the "'physical loss of' or 'physical damage to'" requirement).  Indeed, two decisions from the Eastern District of Missouri and two decisions from the Western District of Missouri have dismissed similar claims

---

[1]     Zurich has compiled nearly 190 orders dismissing COVID-19 property-insurance cases like this one in an exhibit to this Motion.  *See* Pollock Decl. Ex. 18.

at the pleading stage.[2]  So too here; Lindenwood does not identify any "physical" loss or damage to its property from COVID-19.  Nor could it, because no matter whether Lindenwood characterizes its cause of loss as the government orders issued in response to COVID-19, the virus, the "imminent risk" or "presence" of the virus, the pandemic, "droplets" or "aerosols" containing the virus, or "virus-surface bonds," none are capable of having a "direct physical effect" that results in property damage, much less a total loss of property, as numerous courts have concluded in dismissing COVID-19 property-insurance cases, including those applying Missouri law.

*Second*, Lindenwood's request for "Civil or Military Authority" coverage fails for additional reasons.  The COVID-19 government orders were not issued in "response" to "direct physical loss of or damage" to property "not owned, occupied, leased or rented by" Lindenwood, but instead were issued in response to the risk that further spread of the virus posed to human health.  *See BBMS*, 2020 WL 7260035, at *6.  Nor did the orders "prohibit access" to Lindenwood's campuses, even if they limited its business operations.

*Third*, even if Lindenwood could convince the Court to recognize the ubiquitous presence of COVID-19 and its related closure orders as direct physical loss or damage, the policy's "Contamination" exclusion nonetheless precludes all coverage.  The policy expressly bars coverage for the "inability to use or occupy property or any cost of making property safe or suitable for use or occupancy" as a result of "Contamination," and it defines "Contamination" as "[a]ny condition of property due to the actual presence of any … virus."  "COVID-19 is plainly a virus," and therefore, the Contamination exclusion "expressly excludes damage … and even loss of use

---

[2]     *See Robert E. Levy, D.M.D, LLC v. Hartford Fin. Servs. Grp.*, 2021 WL 598818 (E.D. Mo. Feb. 16, 2021) (Clark, J.) (granting motion for judgment on the pleadings); *Ballas Nails & Spa, LLC v. Travelers Cas. Ins. Co. of Am.*, 2021 WL 37984 (E.D. Mo. Jan. 5, 2021) (Perry, J.) (granting motion to dismiss with prejudice); *BBMS*, 2020 WL 7260035 (granting motion to dismiss); *Zwillo V, Corp. v. Lexington Ins. Co.*, 2020 WL 7137110 (W.D. Mo. Dec. 2, 2020) (Ketchmark, J) (same).

of property caused by [the COVID-19] virus." *Zwillo*, 2020 WL 7137110, at *6. Multiple courts have found allegations like Lindenwood's to trigger similar exclusions, and "it is unsurprising that 'federal courts interpreting virtually identical Virus Exclusions have nearly unanimously determined that these exclusions bar coverage of similar claims.'" *Riverwalk Seafood Grill Inc. v. Travelers Cas. Ins. Co. of Am.*, 2021 WL 81659, at *3 (N.D. Ill. Jan. 7, 2021).

For these and the additional reasons discussed below, the Court should dismiss Lindenwood's amended complaint with prejudice.

## BACKGROUND

### I.    Lindenwood's Allegations

Lindenwood is a private liberal arts college located principally in Missouri. Am. Compl. ("AC") ¶ 21. Zurich issued Lindenwood a property-insurance policy for the period July 1, 2019, to July 1, 2020, covering Lindenwood's main campus in St. Charles, Missouri, a second campus in Belleville, Illinois, and smaller locations throughout Missouri. *Id.* Ex. A, ECF 33-1, ("Policy") at 16[3]; *see also* AC ¶¶ 21, 86.

Lindenwood seeks property-insurance coverage under the Policy for "substantial losses" associated with the COVID-19 pandemic. *Id.* at ¶ 41. According to Lindenwood, "[a]s a result of the Coronavirus and the COVID-19 pandemic, including the presence of the Coronavirus and the COVID-19 disease on [its] insured property and in surrounding areas, and orders issued by national, state and local governments in response thereto," it "effectively closed its campus in mid-March 2020 and has not yet been able to resume normal operations and use of its insured property." *Id.* at ¶ 26. Lindenwood alleges that the "virus was and has been physically present on [its] insured property and in surrounding areas" and that "[g]iven the nature of the virus and its community

---

[3]    All references to page numbers in the Policy refer to the ECF page number.

spread, persons infected with COVID-19 have been present on [its] campuses and in surrounding areas." *Id.* at ¶ 33. On behalf of itself, two putative nationwide classes, and two subclasses, Lindenwood asserts causes of action for breach of contract and declaratory judgment based on seven coverage provisions. *Id.* at ¶¶ 19, 99-116.

## II.    Lindenwood's Property-Insurance Policy

The Policy insures against "direct physical loss of or damage caused by a Covered Cause of Loss to Covered Property[.]" Policy 17. "Covered Cause of Loss" means "[a]ll risks of direct physical loss of or damage from any cause unless excluded." *Id.* at 67.

Lindenwood seeks coverage under several coverage provisions within the Policy. It first invokes "Property Damage Coverage," which insures among other things "[t]he Insured's interest in buildings (or structures) … that the Insured owns, occupies, leases or rents" and "[t]he Insured's interest in Personal Property, including Improvements and Betterments." *Id.* at 25; AC ¶ 99.

Lindenwood also cites the "Time Element" coverages (commonly called business interruption). *See* AC ¶¶ 100-07. If an insured suffers direct physical loss or damage to covered property, then the Policy also insures business-income losses during the time necessary to repair or replace the lost or damaged property:

> The Time Element loss must result from the necessary Suspension of the Insured's business activities at an Insured Location. The Suspension must be due to direct physical loss of or damage to Property … caused by a Covered Cause of Loss at the Location…. Policy 30.

The "Time Element" coverages apply only during the "Period of Liability," which the Policy defines in pertinent part as the time beginning when the "physical loss or damage" happens, and ending when the "building and equipment could be repaired or replaced." *Id.* at 34.

Specifically, Lindenwood seeks coverage under four "Time Element" provisions:

1. "Gross Earnings" covers a loss of "Gross Earnings" as calculated per the Policy's terms. Policy 31; AC ¶ 104. The loss must result from the Suspension of the Insured's business activities "due to direct physical loss of or damage to Property." Policy 30.

4

2. "Extended Period of Liability" applies only if there is "Gross Earnings" loss coverage and extends that coverage beyond the "Period of Liability" up to an additional year or until Lindenwood "could restore its business with due diligence, to the condition that would have existed had no direct physical loss or damage occurred" to the insured property, whichever occurs first.  Policy 31; AC ¶ 105.

3. "Extra Expense" covers the reasonable and necessary additional costs needed to "resume and continue as nearly as practicable" Lindenwood's "normal business activities that otherwise would be necessarily suspended, due to direct physical loss of or damage caused by a Covered Cause of Loss" to insured property.  Policy 32; AC ¶¶ 106-07.

4. "Civil or Military Authority" covers loss "resulting from the necessary Suspension of the Insured's business activities" at its insured location "if the Suspension is caused by order of civil or military authority that prohibits access to the Location" and the order "result[s] from a civil authority's response to direct physical loss of or damage caused by a Covered Cause of Loss to property not owned, occupied, leased or rented by" Lindenwood.  Policy 37-38; AC ¶¶ 109-113.

Lindenwood further invokes "special" coverages for: (i) the protection and repair of property and (ii) reasonable fees incurred in providing information required by Zurich in connection with a claim for which Zurich has accepted liability.[4]

> Significantly, the Policy contains an exclusion for loss or damage caused by:
>
> Contamination, and any cost due to Contamination including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy, except as provided by the Radioactive Contamination Coverage of this Policy.  Policy 26, § 3.03.01.01.

"Contamination" is defined to include "[a]ny condition of property due to the actual presence of any … pathogen or pathogenic organism, bacteria, *virus*, disease causing or illness causing agent." *Id.* at 67, § 7.09 (emphasis added).

## LEGAL STANDARDS

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

---

[4]      Protection and Preservation of Property" coverage requires "actual or imminent physical loss or damage due to a Covered Cause of Loss."  Policy 45; AC ¶¶ 114-15.  And "Professional Fees" coverage necessarily incorporates the physical loss or damage requirement since it applies only if coverage is available under one of the other provisions.  Policy 45; AC ¶ 116.

662, 678 (2009) (quotation marks and citation omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  "Determining whether a complaint states a plausible claim for relief [is] … a context-specific task that requires the reviewing court to draw on its *judicial experience and common sense*." *Id.* at 679 (emphasis added).

Under Missouri law, the "interpretation of an insurance policy is a question of law." *Seaton v. Shelter Mut. Ins. Co.*, 574 S.W.3d 245, 247 (Mo. 2019) (quotation marks and citation omitted). Courts must read an insurance policy "as a whole and determine the intent of the parties." *Mendota Ins. Co. v. Lawson*, 456 S.W.3d 898, 903 (Mo. Ct. App. 2015) (quotation marks and citation omitted).  The "clear and unambiguous language in an insurance policy should be given its plain meaning" (*St. Paul Fire & Marine Ins. Co. v. Lippincott*, 287 F.3d 703, 705 (8th Cir. 2002)) and "must be enforced as written" (*Seaton*, 574 S.W.3d at 247).   "Mere disagreement over the interpretation … does not create an ambiguity." *Mendota*, 456 S.W. 3d at 903.  Moreover, courts must "not unreasonably distort the language of a policy or exercise inventive powers for the purpose of creating an ambiguity[.]" *Eichholz v. Secura Supreme Ins. Co.*, 735 F.3d 822, 827 (8th Cir. 2013) (applying Missouri law) (quotation marks and citation omitted).

## ARGUMENT

**I.     Lindenwood Has Not Stated And Cannot State A Claim For Breach Of Contract.**

### A.     Lindenwood Fails To Allege Direct Physical Loss Of Or Damage To Property.

As the insured and the party alleging breach of contract, Lindenwood "bears the burden" of alleging that the "claimed loss or damage is covered under the policy." *Westchester Surplus Lines Ins. Co. v. Interstate Underground Warehouse & Storage, Inc.*, 946 F.3d 1008, 1010 (8th

Cir. 2020).  Lindenwood does not plausibly allege either direct physical damage to property or a direct physical loss of property as required under any of the purportedly applicable coverages.[5]

To begin, "[a] survey of cases, both from Missouri and elsewhere, confirms that the phrase ['direct physical loss'] requires some physical event or force on, in or affecting the property in question and not mere 'loss of use,'" because a different interpretation "would render the word 'physical' a nullity." *BBMS,* 2020 WL 7260035, at *3; *see also Pentair, Inc. v. Am. Guar. & Liab. Ins. Co.*, 400 F.3d 613, 615-16 (8th Cir. 2005) (applying Minnesota law) ("mere loss of use or function" is not "'direct physical loss or damage'" under the policy).

Nearly every court that has considered the issue—including Judges Clark and Perry of this District and courts in two other putative class actions involving similar Zurich policies—has concluded that insureds in COVID-19 property-insurance cases could not allege "direct physical loss" or "direct physical damage" to property.[6]  For example, Judge Clark held that "Eighth Circuit

---

[5]    Lindenwood obliquely references a breach of the "implied covenant of good faith and fair dealing" (AC ¶ 155), but does not assert anything other than a purported breach of the coverage provisions.  Accordingly, Lindenwood has failed to allege "bad faith."  *See Cordry v. Vanderbilt Mortg. & Fin., Inc.*, 445 F.3d 1106, 1112 (8th Cir. 2006); *see also Robert E. Levy*, 2021 WL 598818, at *12 (rejecting bad-faith claim premised solely on denial of coverage for COVID-19 business losses); *Ultimate Hearing Sols. II, LLC v. Twin City Fire Ins. Co.*, 2021 WL 131556, at *11 (E.D. Pa. Jan. 14, 2021) (same).

[6]    *E.g., Brunswick Panini's, LLC v. Zurich Am. Ins. Co.*, 2021 WL 663675, at *8 (N.D. Ohio Feb. 19, 2021) ("Neither the COVID-19 virus nor the state government orders caused 'direct physical loss of or damage to'" property); *Crescent Plaza Hotel Owner L.P. v. Zurich Am. Ins. Co.*, 2021 WL 633356, at *3 (N.D. Ill. Feb. 18, 2021) ("[T]he phrase requires either a permanent disposition of the property due to a <u>physical</u> change ('loss'), or <u>physical</u> injury to the property requiring repair ('damage').");  *BBMS*, 2020 WL 7260035, at *4 ("[T]he weight of authority demonstrates that stay at home orders and the existence of COVID-19, alone, does not qualify as 'direct physical loss of or damage to' property."); *Carrot Love, LLC v. Aspen Specialty Ins. Co.*, 2021 WL 124416, at *2 (S.D. Fla. Jan. 13, 2021) (The "nearly unanimous view" is that "COVID-19 does not cause direct physical loss or damage to a property sufficient to trigger coverage"); *Torgerson Props., Inc. v. Cont'l Cas. Co.*, 2021 WL 615416, at *1 (D. Minn. Feb. 17, 2021) ("The weight of authority is nearly unanimous that state orders restricting business operations because of the pandemic are not covered[.]"); *Kahn v. Pa. Nat'l Mut. Cas. Ins. Co.*, 2021 WL 422607, at *7 (M.D. Pa. Feb. 8, 2021) ("[W]e are persuaded by the *unanimity* among our colleagues on" this

case law supports the conclusion that 'direct physical loss of' requires an actual physical event affecting the property" and "not mere loss of use." *Robert E. Levy*, 2021 WL 598818, at *9.  He reasoned, "'direct' and 'physical' modif[y] 'loss' and 'damage,' and thus indicate that both terms [loss and damage] require a direct physical alteration to the property at issue." *Id.* at *11.  Judge Perry similarly held that under Missouri law, direct physical loss or damage requires an "injury to property" or facts establishing that the "property was rendered unusable or the premises uninhabitable." *Ballas*, 2021 WL 37984, at *4.  She dismissed the complaint because the insured "[did] not claim any injury to property." *Id.*

Western District of Missouri Chief Judge Phillips similarly held that "events that do not have a direct physical effect on the insured property will not give rise to coverage, even if they interrupt business operations or deny access to the premises." *BBMS*, 2020 WL 7260035, at *4.  She reasoned that "stay at home orders and the existence of COVID-19, alone, do[] not qualify as 'direct physical loss of or damage to' property." *Id.*  Judge Ketchmark of the Western District of Missouri likewise interpreted "direct physical loss of or damage" to "require[] some form of physical damage to the insured property to effect coverage," which means a "physical alteration of property, or, put another way, a tangible impact that physically alters property." *Zwillo*, 2020 WL 7137110, at *4.  She held that a "simple deprivation of use" does not qualify. *Id.* at *5.

---

issue) (emphasis added); *Soundview Cinemas Inc. v. Great Am. Ins. Grp.*, 2021 WL 561854, at *9 (N.Y. Sup. Ct. Feb. 8, 2021) (Courts "have almost uniformly held that loss of use of premises due to COVID-19 related government orders does not trigger business income coverage based on physical loss to property."); *Tappo of Buffalo, LLC v. Erie Ins. Co.*, 2020 WL 7867553, at *4 (W.D.N.Y. Dec. 29, 2020) ("[T]he overwhelming majority of courts to have considered this issue [have held] that plaintiffs cannot plausibly allege that this impact is the result of direct physical loss of or damage to covered property"); *Michael Cetta, Inc. v. Admiral Indem. Co.*, 2020 WL 7321405, at *8 (S.D.N.Y. Dec. 11, 2020) ("[N]early every court to address this issue has concluded that loss of use of a premises due to a governmental closure order does not trigger business income coverage premised on physical loss to property."); *see also* Pollock Decl. Ex. 18 (collecting 154 cases dismissing COVID-19 claims for failure to allege "direct physical loss," "direct physical damage," or both).

Under the standard articulated in these cases, Lindenwood does not and cannot allege the requisite "direct physical loss of or damage to" property, or in the case of "Protection and Preservation of Property" coverage, "actual or imminent physical loss or damage."

### 1. The COVID-19 Orders Did Not Cause Direct Physical Loss Of Or Damage To Property As A Matter of Law.

Lindenwood's allegation that the COVID-19 orders *themselves*, as opposed to the coronavirus, caused physical loss or damage (AC ¶¶ 13, 26) is "just simply nonsense," as one court put it. *Gavrilides Mgmt. Co. v. Mich. Ins. Co*., No. 20-258-CB (Mich. Cir. Ct. July 1, 2020), Hr'g Tr. at 20:10-18 (Pollock Decl. Ex. 13); *see also Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc.*, 2020 WL 5642483, at *2 (N.D. Cal. Sept. 22, 2020) (argument that "the loss is created by the Closure Orders rather than the virus, and therefore the Virus Exclusion does not apply" is "[n]onsense"); *Henry's La. Grill, Inc. v. Allied Ins. Co. of Am*., 2020 WL 5938755, at *4 (N.D. Ga. Oct. 6, 2020) (rejecting argument as "exceed[ing] any reasonable bounds of possible construction" because "[u]nder the Plaintiffs' logic, a minute before the Governor issued the Order, the [insured restaurant property] existed in one state" and a "minute later, the Governor issued the order, and the restaurant underwent a physical change that left [it] in a different state").  Another federal court recently noted the "nearly unanimous" weight of authority holding that state orders restricting business operations because of the pandemic are not covered.  *Torgerson Props.*, 2021 WL 615416, at *1; *accord BBMS*, 2020 WL 7260035, at *4.

Furthermore, Lindenwood's Policy expressly excludes coverage for mere "loss of use"— that is, coverage for loss of use of property untethered to any physical loss or damage.  Policy 26, § 3.03.02.01 ("This Policy excludes … [l]oss or damage arising from … loss of use."), § 3.03.01.03 (excluding loss or damage "arising from the enforcement of any law, ordinance, regulation or rule regulating or restricting the … occupancy, operation or other use … of any

property").  Several judges, including Judge Perry, have enforced "loss of use" exclusions when dismissing claims based solely on the COVID-19 orders.  As Judge Perry explained, "to the extent [the insured] alleges that the government closure orders resulted in its inability to use its property and thus resulted in loss, the policy contains an exclusion stating that [the insurer] 'will not pay for loss or damage caused by or resulting from … loss of use ….'"  *Ballas*, 2021 WL 37984, at *4.[7]  The Court should conclude the same here.  The COVID-19 orders cause only economic losses from "loss of use" of property (which is expressly excluded in any event)—not "direct physical loss" or "direct physical damage" to property.

## 2.      The "Threat" Or "Presence" Of The Coronavirus Does Not Constitute Direct Physical Loss Of Or Damage To Property As A Matter of Law.

Lindenwood attempts to evade these on-point authorities by alleging that the "presence of the SARS-CoV-2 virus on [its] property and other nearby property and in the air … physically altered such property and air" (AC ¶ 36) and that the "imminent risk of" and "presence of the SARS-CoV-2 virus … effectively eliminates the utility and habitability of [its property and other nearby] property" (*id.* at ¶¶ 37-38).  Such conclusory statements fail to identify what covered property was damaged or to what extent, and thus are fatally insufficient under *Iqbal*, 556 U.S. at 686.  Indeed, courts have overwhelmingly rejected the precise argument Lindenwood advances here—*i.e.*, that the "threat" or "presence" of the coronavirus constitutes "direct physical loss" or "direct physical damage" to property.[8]

---

[7]      *See also Mortar & Pestle Corp. v. Atain Specialty Ins. Co.*, 2020 WL 7495180, at *4 (N.D. Cal. Dec. 21, 2020); *Whiskey River on Vintage, Inc. v. Ill. Cas. Co.*, 2020 WL 7258575, at *18 (S.D. Iowa Nov. 30, 2020); *Harvest Moon Distribs., LLC v. S.-Owners Ins. Co.*, 2020 WL 6018918, at *6 (M.D. Fla. Oct. 9, 2020).

[8]      *See Zwillo,* 2020 WL 7137110, at *5-6 (Whether "couched in terms of COVID-19's presence on the premises or of loss of use of premises due to the stay-at-home orders (or the virus itself), … the policy does not cover the alleged claim.")*; Café La Trova LLC v. Aspen Specialty*

Lindenwood alleges the presence of the virus "adversely alters the physical object, as well as the building in which that object is located"; however, Lindenwood does not allege that the physical condition of the *property* is transformed; rather, it alleges that "the object and the building are transformed from safe for occupancy" to "uninhabitable, unfit for its intended purposes,

*Ins. Co.*, 2021 WL 602585, at *8 (S.D. Fla. Feb. 16, 2021) ("'[T]he mere presence of the virus on the physical structure of the premises' does not amount to 'direct physical loss.'") (citation omitted); *Vandelay Hosp. Grp. LP v. Cincinnati Ins. Co.*, 2021 WL 462105, at *1 (N.D. Tex. Feb. 9, 2021) ("[The insured ] has not adequately alleged that the presence of COVID-19 caused any distinct, demonstrable physical alteration of [its] property so as to trigger coverage under any [policy] provision[.]"); *Mena Catering, Inc. v. Scottsdale Ins. Co.*, 2021 WL 86777, at *7 (S.D. Fla. Jan. 11, 2021) ("There is no 'direct physical loss' where the alleged harm consists of the mere presence of a virus on the physical structure of the premises."); *Unmasked Mgmt., Inc. v. Century-Nat'l Ins. Co.*, 2021 WL 242979, at *6 (S.D. Cal. Jan. 22, 2021) ("[T]he Court is not persuaded that such allegations [that the virus was present on the insured property because an employee tested positive for COVID-19 and the virus 'particles, though unseen, structurally alter their environment in a manner that causes loss and damage by rendering affected premises dangerous to human health'] demonstrate a physical alteration to Plaintiffs' property"); *Uncork & Create LLC v. Cincinnati Ins. Co.*, 2020 WL 6436948, at *5 (S.D.W. Va. Nov. 2, 2020) ("[E]ven when present, COVID-19 does not threaten the inanimate structures covered by property insurance policies[.]"); *Water Sports Kauai, Inc. v. Fireman's Fund Ins. Co.*, 2020 WL 6562332, at *3 (N.D. Cal. Nov. 9, 2020) ("[T]he overwhelming majority of courts … have determined that the mere threat of coronavirus cannot cause a 'direct physical loss of or damage to'" property.); *Moody v. Hartford Fin. Grp., Inc.*, 2021 WL 135897, at *6 (E.D. Pa. Jan. 14, 2021) (The allegation that "the virus *is* on [the insured's] property and has been damaged by it … fails to plausibly allege direct physical loss or damage.  Neither the presence of the virus nor an imminent threat thereof … has 'nearly eliminated or destroyed' the property's functionality or rendered it 'useless or uninhabitable.'"); *Selane Prods., Inc. v. Cont'l Cas. Co.*, 2021 WL 609257, at *4 (C.D. Cal. Feb. 8, 2021) ("COVID-19 and its impacts do not constitute 'direct physical loss of or damage to property.'"); *Carrot Love*, 2021 WL 124416, at *1-2 (dismissing complaint alleging that "COVID-19 deposited on 'various surfaces'" in light of the "nearly unanimous view that COVID-19 does not cause direct physical loss or damage to a property"); *Digital Age Mkt'g Grp., Inc. v. Sentinel Ins. Co.*, 2021 WL 80535, at *5 (S.D. Fla. Jan. 8, 2021) (even though complaint alleged that "'the virus is physically causing damage due to its proclivity to attach to the surfaces for prolonged periods of time', as well as a threat to health," policyholder failed to allege a "direct physical loss," which "required some actual loss, or diminution of value"); *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, 2021 WL 83758, at *3 (N.D. Ill. Jan. 10, 2021) ("Even if plaintiff could plead the presence of the COVID-19 virus on the premises, that allegation alone is not sufficient," and the amended complaint "does not cure this defect" even though it alleges the "virus spreads through particles that land on surfaces and physically attaches itself to physical premises."); *Steve Foley Cadillac, Inc. v. N.Y. Marine & Gen. Ins. Co.*, No. 2020-L-06774 (Ill. Cir. Ct. Feb. 19, 2021) ("Temporary contamination of a surface" by viruses "appearing naturally in the environment does not constitute physical damage to that surface within the usual and ordinary meaning of the phrase.") (Pollock Decl. Ex. 16).

dangerous" and "potentially deadly" to *human life*.  AC ¶¶ 36, 85; *see also Town Kitchen LLC v. Certain Underwriters at Lloyd's*, 2021 WL 768273, at *5 (S.D. Fla. Feb. 26, 2021) ("[T]he property did not change.  The world around it did.").  Drawing on their "common sense" (*see Iqbal*, 556 U.S. at 679), courts have held that the virus damages lungs and human health, not property. *See id.* at *7 ("The harm from COVID-19 stems from having living, breathing human beings inside one's business—it is not damage done to the physical business itself, it is damage done to other living, breathing human beings."); *Social Life*, Hr'g Tr. at 4:17-18, 4:25-5:4, 6:14-20 (Pollock Decl. Ex. 12) (even if the "virus exists everywhere," it "damages lungs[,] … [i]t doesn't damage the property."); *Uncork*, 2020 WL 6436948, at *5 ("[T]he pandemic impacts human health and human behavior, not physical structures."); *Johnson* v. *Hartford Fin. Servs. Grp., Inc.*, 2021 WL 37573, at *7 (N.D. Ga. Jan. 4, 2021) (similar).  Indeed, the virus "does not physically alter the appearance, shape, color, structure, or other material dimension of the property." *Sandy Point Dental*, 2021 WL 83758, at *3.

Numerous courts have concluded that if property merely needs to be cleaned—as could be the case if the COVID-19 virus were present at a property—the property has not suffered a "direct physical loss" or "direct physical damage."  For example, a Kansas federal judge concluded, "even assuming that the virus physically attached to covered property, it did not constitute the direct, physical loss or damage required to trigger coverage because its presence can be eliminated." *Promotional Headwear Int'l v. Cincinnati Ins. Co.*, 2020 WL 7078735, at *8 (D. Kan. Dec. 3, 2020).  Similarly, a West Virginia federal judge concluded, "even when present, COVID-19['s] … presence on surfaces can be eliminated with disinfectant.  Thus, even actual presence of the virus would not be sufficient to trigger coverage for physical damage or physical loss to the property." *Uncork*, 2020 WL 6436948, at *5.  "Because routine cleaning … eliminates the virus on surfaces,

there would be nothing for an insurer to cover." *Id.*[9]   The Court should therefore dismiss Lindenwood's claims for failure to allege "direct physical loss or damage" because it is *undeniable* that the COVID-19 virus can be readily eradicated using standard household-cleaning products.[10]

Lindenwood's allegations that "[b]y bonding with, and becoming part of, the property it comes in contact with, the SARS-CoV-2 virus adversely alters the physical object, as well as the building in which that object is located" change nothing.   *See* AC ¶ 85.   Again, injury to property is required under Missouri law; a mere "bond[]" to property is not such an injury.   Indeed, courts applying the laws of other states have dismissed COVID-19 insurance cases because "[d]amage by sources unnoticeable to the naked eye"—like the molecular bonds alleged here—"must 'meet a higher threshold' than 'typical examples of physical damage from an outside source that may demonstrably alter the components of a building.'"   *ATCM Optical, Inc. v. Twin City Fire Ins. Co.*, 2021 WL 131282, at *4 (E.D. Pa. Jan. 14, 2021) (citations omitted).   The invisible agents must render the property uninhabitable or useless.   *See Indep. Rest. Grp. v. Certain Underwriters at Lloyd's*, 2021 WL 131339, at *5 (E.D. Pa. Jan. 14, 2021).   But the alleged "bonds" between the virus and objects located at Lindenwood's property can be "broken through intervening forces" (AC ¶ 81), such as a simple cleaning with Lysol, and thus do not render the property uninhabitable

---

[9]   *See also B Street Grill & Bar LLC v. Cincinnati Ins. Co.*, No. CV-20-01326-PHX-SMB, at *10 (D. Ariz. Mar. 8, 2021) (Pollock Decl. Ex. 17); *Whiskey Flats Inc. v. Axis Ins. Co.*, 2021 WL 534471, at *4 (E.D. Pa. Feb. 12, 2021); *Café La Trova*, 2021 WL 602585, at *9; *Moody*, 2021 WL 135897, at *6; *Unmasked Mgmt.*, 2021 WL 242979, at *6; *O'Brien Sales & Mktg., Inc. v. Transp. Ins. Co.*, 2021 WL 105772, at *4 (N.D. Cal. Jan. 12, 2021); *Terry Black's Barbeque, LLC v. State Auto. Mut. Ins. Co.*, 2020 WL 7351246, at *7 (W.D. Tex. Dec. 14, 2020); *Malaube, LLC v. Greenwich Ins. Co.*, 2020 WL 5051581, at *8 (S.D. Fla. Aug. 26, 2020); *Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's*, 2020 WL 5791583, at *3-4 (M.D. Fla. Sept. 28, 2020); *Mama Jo's, Inc. v. Sparta Ins. Co.*, 823 F. App'x 868, 879 (11th Cir. 2020); *Universal Image Prods., Inc. v. Fed. Ins. Co.*, 475 F. App'x 569, 573-74 n.8 (6th Cir. 2012) ("basic cleaning" "performed with hot water and 'Lysol'" is not physical loss or damage).

[10]   Concurrent with this motion, Zurich has filed a request for judicial notice of this fact because it is not subject to "reasonable dispute," and it may be considered when deciding a motion to dismiss.   *Williams v. Emps Mut. Cas. Co.*, 845 F.3d 891, 903-04 (8th Cir. 2017).

or useless.  *See Robert E. Levy*, 2021 WL 598818, at *10 (Plaintiffs failed to allege anything "physical that rendered the property uninhabitable; to the contrary, [they] allege that they continued using their property[.]"); *R.T.G. Furniture Corp. v. Hallmark Spec. Ins. Co.*, 2021 WL 686864, at *3 (M.D. Fla. Jan. 22, 2021) ("[C]ommon sense tells us that COVID-19 is incapable of causing a tangible injury to property.  COVID-19 is a virus that harms people, not structures.  Discovery … would not alter this basic point.").

Lindenwood's theory is wholly implausible and defies common sense.   Under Lindenwood's theory, the virus is everywhere, and consequently *every* building (including public and private spaces we all continue to use, and hospitals and homes where people who contracted COVID-19 are quarantined) would be "dangerous," "potentially deadly," and uninhabitable.  This assertion demands a total suspension of reality.[11]

Lindenwood evidently hopes it can reverse engineer a plausible claim for relief by incorporating buzzwords from *Studio 417, Inc. v. Cincinnati Insurance Co.*, 478 F. Supp. 3d 794 (W.D. Mo. 2020).  This case is among the small minority of federal decisions that have denied a motion to dismiss in a COVID-19 property-insurance case and, unlike in this case, the policy in *Studio 417* contained neither a virus exclusion nor loss-of-use exclusion.  More importantly, *Studio 417* and the other similar decisions by the same judge[12] have been serially rejected, including by another judge in the same district, for two reasons.[13]

---

[11]    *See Bluegrass, LLC v. State Auto. Mut. Ins. Co.*, 2021 WL 42050, at *5 (S.D.W. Va. Jan. 5, 2021) ("I am also unpersuaded … that the presence of COVID-19 at the covered properties created an altered physical condition that would trigger coverage under the policy.  To find that a physical loss or damage has taken place … would be to ignore the reality that many restaurants and cafes have continued to operate during the pandemic.").

[12]    *NeCo, Inc. v. Owners Ins. Co.*, 2021 WL 601501 (W.D. Mo. Feb. 16, 2021); *Blue Springs Dental Care, LLC v. Owners Ins. Co.*, 2020 WL 5637963 (W.D. Mo. Sept. 21, 2020); *K.C. Hopps, Ltd. v. Cincinnati Ins. Co.*, 2020 WL 6483108 (W.D. Mo. Aug. 12, 2020).

[13]    *E.g., Zwillo*, 2020 WL 7137110, at *8 (respectfully disagree[ing] with those cases");

14

First, *Studio 417* defined "loss" as merely a deprivation of use but ignored the context in which "loss" is used in the Policy.  In doing so, it erroneously concluded that the insured had alleged direct physical loss because there was a connection between the insured's purely financial losses and the virus, which is "a physical substance."  *Studio 417*, 2020 WL 4692385, at *4.  But "reading the term 'loss' in isolation goes against Missouri's well-established proviso that an insurance policy must be read as a whole," and "[a]n Insured cannot create an ambiguity by reading only a part of the policy and claiming that, read in isolation, that portion of the policy suggests a level of coverage greater than the policy actually provides when read as a whole."  *Zwillo*, 2020 WL 7137110, at *2, 5.  The word "loss" cannot be read in isolation from the modifiers "direct" and "physical," which "relay actual, demonstrable loss of or harm to some portion of the premises itself."  *Id.* at *4.  Under the plain language of the policies requiring "direct physical loss of or damage to property," it is not the damage-causing agent that must be physical, but rather the alleged loss or damage to property.

Second, *Studio 417* cannot be squared with the cases on which it ostensibly relied.  *See Port Auth. of NY & NJ v. Affiliated FM Ins. Co.*, 311 F.3d 226 (3d Cir. 2002); *Prudential Prop. & Cas. Ins. Co. v. Lillard-Roberts*, 2002 WL 31495830 (D. Or. June 18, 2002).  These cases do not support a holding that mere presence of viral particles constitute "direct physical loss of or damage to" property.  In *Lillard-Roberts*, the court found "a 'distinct and demonstrable' damage" to a

---

*Gilreath Family & Cosmetic Dentistry, Inc. v. Cincinnati Ins. Co.*, 2021 WL 778728, at *6 (N.D. Ga. Mar. 1, 2021) ("[T]he Court disagrees with [*Studio 417*'s and *Blue Springs*'] reasoning that the potential attachment of a virus with a limited life cycle to the walls of a building equals physical damage or loss."); *Circus Circus LV, LP v. AIG Specialty Ins. Co.*, 2021 WL 769660, at *5 (D. Nev. Feb. 26, 2021) (*Studio 417* is "heavily criticized"); *SAS Int'l, Ltd. v. Gen. Star Indem. Co.*, 2021 WL 664043, at *5 n.8 (D. Mass. Feb. 19, 2021) ("[C]ourts have either tiptoed around [*Studio 417*'s] … holding, criticized it, or treated it as the minority position"); *Crescent Plaza*, 2021 WL 633356, at *3  ("respectfully disagree[ing]" with *Studio 417*); *Cafe Plaza de Mesilla, Inc. v. Cont'l Cas. Co.*, 2021 WL 601880, at *6 (D.N.M. Feb. 16, 2021) (*Blue Springs* "represents an outlier case").

dwelling because "visible mold contamination in the house" was not "removable" and rendered the house "a total loss." 2002 WL 31495830, at *8.  The court in *Lillard-Roberts* relied on cases like *Western Fire Insurance Co. v. First Presbyterian Church*, in which the Colorado Supreme Court held that "direct physical loss" can result if "the premises became so infiltrated and saturated" with a contaminant "as to be uninhabitable, making further use of the building highly dangerous."  437 P.2d 52, 55 (Colo. 1968).  Thus, to be covered loss or damage, the contamination must be so pervasive and, in the case of *Lillard-Roberts*, irremovable, as to render property uninhabitable.  *Studio 417* departed from this rigorous legal standard by equating the temporary presence of the virus with direct physical loss or damage to property.

*Studio 417*'s mere-presence theory is even less in sync with *Port Authority*.  In fact, the Third Circuit explicitly *rejected* the "mere presence" theory:  "[I]f asbestos is present in components of a structure, but *is not in such form or quantity as to make the building unusable*, the owner has not suffered a loss.  The structure continues to function—it has not lost its utility." *Port Authority*, 311 F.3d at 236 (emphasis added); *see also First Presbyterian*, 437 P.2d at 55 ("[N]o direct physical loss [was] sustained … the first day that gasoline actually seeped onto the insured's premises.  To the contrary, no direct physical loss was incurred … until the [a]ccumulation of gasoline … [b]uilt up to the point that there was such infiltration and contamination of the foundation, walls and rooms … as to render [the building] uninhabitable …").

Applying the cases cited in *Studio 417*, Lindenwood's complaint fails.  Lindenwood does not claim that any specific real or personal property was rendered a "total loss" due to an irremovable contaminant.  *Lillard-Roberts*, 2002 WL 31495830, at *8.  Lindenwood concedes, as it must, that the virus *is* removable with "regular hand-washing and cleaning surfaces," AC ¶ 65, a conclusion supported by the numerous decisions referenced above, including those rejecting

*Studio 417*.[14]  Lindenwood does not allege any property "became so infiltrated and saturated" with SARS-CoV-2 "as to be uninhabitable, making further use of the building highly dangerous." *First Presbyterian*, 437 P.2d at 55.  Indeed, Lindenwood does not allege any "quantity" of virus particles whatsoever, let alone a quantity of particles so great as to support a conclusion that, "[a]lthough neither the building nor its elements were demonstrably altered, its function was eliminated." *Port Authority*, 311 F.3d at 235.  With only vague references to "confirmed COVID-19 test[s]" of students and employees (AC ¶ 29) and the "presence of the SARS-CoV-2 virus on [its] property and other nearby property" (*id.* at ¶ 36), Lindenwood invites the type of "unwarranted inferences" this Court is not bound to accept and routinely rejects.  *Phyllis Schlafly Revocable Tr. v. Cori*, 2021 WL 65054, at *4 (E.D. Mo. Jan. 7, 2021).  But even if the Court were to accept the inference that the virus was merely present, that does not equate to "uninhabitability" of a structure, and thus does not constitute covered loss or damage.

In fact, Lindenwood's other factual allegations nullify its conclusory claim of "uninhabitability."  For instance, Lindenwood admittedly "reopened its campuses in a limited capacity" in Fall 2020.  AC ¶ 6.  And, even in March 2020, when Lindenwood claims it closed its campus due to the virus, it admits that its campus *remained open and accessible* to "essential personnel."  AC ¶¶ 5, 28.  "Dining facilities were limited to take-out meals only," it further admits.  AC ¶ 27.  Even the COVID-19 orders cited by Lindenwood recognized that its property was not "unusable" or "uninhabitable," since they expressly allowed educational institutions to continue operating with modifications.  *See* Pollock Decl. Exs. 1-3, 5; *see* AC ¶¶ 6, 27-28, 33, 70.  Thus, Lindenwood's factual allegations eviscerate its conclusory allegations that its property was "unusable" and "uninhabitable."  And, "[t]he fact that [plaintiff] began reopening, albeit with

---

[14]   This fact also is a proper subject for judicial notice under Fed. R. Evid. 201(b).  *See generally* Request for Judicial Notice, filed herewith.

mitigation measures to protect public health, once certain government restrictions lifted

demonstrates that the government orders addressing the virus rather than the virus itself was the

source seriously affecting the property's functionality." *Moody*, 2021 WL 135897, at *6.

Lindenwood's theory also cannot be reconciled with the Policy as a whole. Specifically,

the "Time Element" coverages apply only during the "Period of Liability," which by definition

ends when "the building and equipment could be repaired or replaced." Policy 34. As Judge Clark

has explained, "[t]he terms 'rebuilt,' 'repair,' and 'replace' in the definition of 'period of

restoration' indicate that the policy provides coverage for 'the length of time set aside for physical

repairs to physical loss of [or] damage.'" *Robert E. Levy*, 2021 WL 598818, at *11 (citation

omitted). "[C]onstruing 'direct physical loss of' to cover mere loss of use would render the 'period

of restoration' definition superfluous because such losses cannot be 'rebuilt, repaired, or

replaced.'" *Id.* "Moreover, the range of contemplated harm, from repairs to starting anew at a

different location, aligns with an understanding that 'loss of' means total destruction while

'damage to' means some amount of harm or injury." *Id.*[15]

---

[15] Other courts are aligned with this reading of similar policy language. *Santo's Italian Café LLC v. Acuity Ins. Co.*, 2020 WL 7490095, at *10 (N.D. Ohio Dec. 21, 2020) ("[C]onstruing 'direct physical loss' or 'direct physical damage' to cover intangible losses, such as the economic losses [the insured] seeks to cover, would render large parts of the [policy's 'Period of Liability'] definition nonsensical because intangible losses cannot be repaired … or replaced."); *Malaube*, 2020 WL 5051581, at *9 ("The words 'repair' and 'replace' contemplate physical damage to the insured premises as opposed to loss of use of it") (quotation marks and citation omitted); *Whiskey Flats*, 2021 WL 534471, at *3 ("These provisions make clear that there must be some sort of physical damage to the property that can be the subject of a repair, rebuilding, or replacement. The COVID-19 pandemic does not fall within that definition."); *Moody*, 2021 WL 135897, at *6 ("Nor would coverage for actual or threatened coronavirus contamination make sense in connection with the period of restoration, because cleaning surfaces cannot reasonably be described as repairing, rebuilding, or replacing."); *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 2020 WL 5525171, at *4 (N.D. Cal. Sept. 14, 2020) ("'[R]epair' and 'replace'" "strongly suggest that the damage contemplated by the Policy is physical in nature."); *W. Coast Hotel Mgmt. v. Berkshire Hathaway Guard Ins. Cos.*, 2020 WL 6440037, at *3-4 (C.D. Cal. Oct. 27, 2020) (the language—"repaired, rebuilt, or replaced"—dooms an insured's assertion that lost income constituted "physical loss of

18

Because all of the coverage provisions at issue require physical loss or damage, the Amended Complaint should be dismissed. *See id.* at *10 (dismissing for failure to allege "anything … physical that rendered the property uninhabitable" when plaintiffs continued to use the property during the COVID-19 pandemic).[16]

**B.    "Civil Or Military Authority" Coverage Also Does Not Apply.**

Lindenwood's claim under the Civil or Military Authority provision should be dismissed for the separate and independent reason that the relevant civil authority orders must have been issued in "response to direct physical loss of or damage caused by a Covered Cause of Loss to property not owned, occupied, leased or rented" by Lindenwood.  Policy 37-38.  The provision therefore "contemplates a sequence of events where direct physical loss or damage to property occurs and then an order prohibiting access *because of that damage* issues."  *Not Home Alone, Inc. v. Phila. Indem. Ins. Co.*, 2011 WL 13214381, at *6 (E.D. Tex. Mar. 30, 2011) (quotation marks and citation omitted).

Numerous courts have dismissed COVID-19 claims for civil authority coverage because this required causal link between prior physical loss or damage and the government's closure order was missing.[17]  For example, Judge Perry held that civil authority coverage was inapplicable because, as the insured admitted, the Missouri COVID-19 orders were "preventative" orders "issued to prevent the spread of the coronavirus."  *Ballas*, 2021 WL 37984, at *5.  They were

---

or damage to property").

[16]    "Professional Fees" coverage applies only to "loss or damage payable under this Policy for which [Zurich] has accepted liability."  Policy 45.  This provision does not apply, because nothing is payable under the policy.  *See Fremont Reorganizing Corp. v. Nat'l Union Fire Ins. Co.*, 2012 WL 13015133, at *4 (C.D. Cal. Jan. 9, 2012) (amendment to add a claim for similar coverage would be futile because "there is no valid claim" to support coverage of expenses).

[17]    Pollock Decl. Ex. 18 (collecting 52 cases dismissing Civil Authority coverage claims because the COVID-19 government orders were not issued in response to physical loss or damage but instead to limit the spread of COVID-19 virus).

therefore not issued "due to" physical loss or damage within the required vicinity. *Id.* at *2, 5. Chief Judge Phillips similarly concluded that "Plaintiff does not allege that any location other than its premises suffered direct physical loss or damage" and "that the [orders] were issued 'due to' that loss or damage." *BBMS*, 2020 WL 7260035, at *6.

Lindenwood attempts to meet the requirement by alleging that, "[a]s a result of the civil authority orders issued by national, state and local governments, each of which was issued in response to direct physical loss of or damage caused by the Coronavirus and COVID-19 to property in which [Lindenwood] has no ownership or possessory rights, access to [its] insured locations have been prohibited." AC ¶ 111. As is clear from the orders themselves, however, the relevant Missouri and Illinois COVID-19 orders were *not* issued in response to prior physical loss or damage. Rather, they were issued in response to the unfolding coronavirus crisis and were preventative measures designed to stop the spread of the virus.[18] Lindenwood admits as much in its complaint. AC ¶¶ 13, 26, 39, 52 (The purpose of state and local government orders "was to address the presence of the Coronavirus and spread of COVID-19.").

Lindenwood attempts to sidestep this conclusion by alleging that "[m]any [government orders] expressly recognize that Coronavirus damages property – not just people." AC ¶ 52. But Lindenwood does not identify any such order governing its properties. Nor could it. Conclusory statements in government orders about property damage caused by COVID-19 lack any factual support and are "not entitled to be assumed true." *Iqbal*, 556 U.S. at 678. In any event, a legislative statement that "[t]he COVID-19 virus causes property loss or damage due to its ability to attach to

---

[18]    *See* Pollock Decl. Exs. 1-2 (purpose of order was "to prevent widespread transmission of COVID-19" and "to minimize morbidity and mortality caused by COVID-19"); Ex. 3 ("St. Charles County has issued executive orders in the last week designed to stop the spread of the COVID-19 virus[.]"); Ex. 5 ("[F]or the preservation of public health and safety … I find it necessary to take additional measures consistent with public health guidance to slow and stop the spread of COVID-19[.]").

surfaces" is "irrelevant" because "the Court must look to the plain terms of the Policy and precedent interpreting similar policies." *See Terry Black's*, 2020 WL 7351246, at *7 n.10.

The Civil Authority provision also requires that the relevant order "prohibit[] access to the Location." Policy 37. Lindenwood identifies no order that forbade people from accessing its campuses; indeed, applicable government orders allowed Lindenwood to continue operating (Pollock Decl. Exs. 1-5), and the Complaint admits that people continued to access Lindenwood's campuses (AC ¶¶ 6, 27-28, 33, 70). Lindenwood's failure to allege the requisite prohibition of access is unsurprising because, "while coronavirus orders have limited [insureds'] operations, no [order] prohibits access to [insureds'] premises." *Sandy Point*, 2020 WL 5630465, at *3; *see also Pappy's Barber Shops, Inc. v. Farmers Grp.*, Inc., 2020 WL 5500221, at *6 (S.D. Cal. Sept. 11, 2020) ("civil authority coverage provision only provides coverage to the extent that access to [the] physical premises is prohibited, and not if [Plaintiffs] are simply prohibited from operating their business"); Pollock Decl. Ex. 18 (collecting 43 cases). Accordingly, like Judge Perry, this Court should conclude that Lindenwood did not "plead any facts" demonstrating that the applicable COVID-19 orders "prohibited access to its business because of the condition of [other] properties." *Ballas*, 2021 WL 37984, at *5.

## C. The Contamination Exclusion Excludes Coverage.

The provisions Lindenwood invokes provide coverage only if the insured has suffered a "Covered Cause of Loss," which the Policy defines as "[a]ll risks of direct physical loss of or damage to property from any cause unless excluded." Policy 67. The Policy expressly excludes from coverage "Contamination, and any cost due to Contamination including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy[.]" *Id.* at 26. The Policy defines "Contamination" as "[a]ny condition of [the] property due to the actual presence of any … virus [or] disease causing or illness causing agent." *Id.* at 67.

In another COVID-19 property-insurance case, Judge Ketchmark held that a "Pollution and Contamination Exclusion" similar to the one here precluded coverage. *Zwillo*, 2020 WL 7137110, at *6-8.  Like here, the policy excluded loss or damage, including "loss of use to property," caused by "Contaminants or Pollutants," which were defined to include viruses. *Id.* at *6.  Judge Ketchmark concluded that because COVID-19 is "plainly a virus," the "provision in question expressly excludes damage or … loss of use of property caused" by the virus. *Id.*  Similarly, Judge Clark concluded that alleged losses "caused by efforts to prevent the spread of COVID-19 … [fell] squarely within [a] virus exclusion, which unambiguously bars coverage for losses 'directly or indirectly' caused by 'the spread or any activity of … [a] virus.'" *Robert E. Levy*, 2021 WL 598818, at *5.  Judge Clark recognized that his "conclusion aligns with the decisions of other federal courts, which have nearly unanimously found the plain language of the virus exclusion at issue unambiguous and that losses caused by COVID-19 related shutdowns fall within the exclusion." *Id.*

Here, Lindenwood alleges "the presence of the Coronavirus and the COVID-19 disease on [its] insured property." AC ¶ 26.  And it seeks coverage for the claimed inability to fully use its properties as a result and the purported costs of making the properties safe or suitable for use. *Id.* at ¶ 132.  Because COVID-19 is a "virus" or "disease causing or illness causing agent," Lindenwood's claims fall squarely within the Contamination exclusion. *Id.* at ¶¶ 42, 45.

Lindenwood cannot escape that conclusion by asserting that "the exclusion applies only to 'contamination,' which is limited to the 'actual presence' of the specific substances," and not to "losses or damage caused by the threat of the Coronavirus or COVID-19 becoming present at a location" (*id.* at ¶ 122), when it repeatedly alleges the "actual presence" of the virus. *See, e.g.*, *id.* at ¶¶ 5, 12, 26, 33-37, 41.  In addition, Lindenwood's allegations about the "threat" of COVID-19

conflate "risk" and "physical loss or damage."  To obtain coverage, Lindenwood must allege that physical loss or damage was caused by a covered *risk*.  *See* Policy 30, 67 (Coverage requires "direct physical loss of or damage to Property … caused by a Covered Cause of Loss," defined as "[a]ll risks of direct physical loss of or damage from any cause unless excluded.")  Thus, Lindenwood may not allege that the "threat of COVID-19" is both the risk itself and the "physical loss or damage."  *Verveine Corp. v. Strathmore Ins. Co. & Comm. Ins. Agency, Inc.*, No. 2084CV01378, at *8 (Mass. Super Ct. Dec. 21, 2020) (dismissing COVID-19 property-insurance claim) (Pollock Decl. Ex. 15).  Such a reading of the Policy would make no sense: the Policy would cover the "threat of COVID-19" caused by the "threat of COVID-19."

Nor can Lindenwood prevail on the argument that the Policy does not "contain an exclusion for 'pandemics,' 'communicable disease,' or anything similar."  AC ¶ 125.  As an Illinois federal court recently concluded, the "mere existence of more explicit language cannot obligate the Court to conclude that the instant language is ambiguous.  Otherwise, all contractual language would be ambiguous as language could always be more specific."  *Riverwalk*, 2021 WL 81659, at *3.  Other courts have reached the same conclusion.[19]  Furthermore, Lindenwood's argument strains common sense because no meaningful difference exists between a "virus" or a "disease causing or illness causing agent" on the one hand, and a "pandemic" or "communicable disease" on the other.  *See*

---

[19]      *See, e.g., Newchops Rest. Comcast LLC v. Admiral Indem. Co.,*  2020 WL 7395153, at *9 (E.D. Pa. Dec. 17, 2020) ("The lack of a specific reference to a pandemic in the policy does not render the provision ambiguous."); *Raymond H Nahmad DDS PA v. Hartford Cas. Ins. Co.*, 2020 WL 6392841, at *10 (S.D. Fla. Nov. 2, 2020) (There is "no basis for construing 'COVID-19' or the 'pandemic' as a non-virus for purposes of [the virus] exclusion" because "the global spread, proliferation, and activity of 'coronavirus' is the underlying pandemic at issue."); *Franklin*, 2020 WL 7342687, at *3 ("[The argument] the Policy could have referred explicitly to these risks or included a specific exclusion 'targeted at pandemics['] is unavailing.").

*Newchops*, 2020 WL 7395153, at *9   ("[T]here is no real distinction between "virus" and "coronavirus pandemic.").[20]

Moreover, courts that have dismissed COVID-19 property-insurance claims have rejected arguments like Lindenwood's that "'contamination' exclusions … should be construed to apply only to situations that reasonable policyholders would understand to constitute polluting activities."   AC ¶ 123.   In *Zwillo*, for example, the court held that, under Missouri law, a "Contaminants or Pollutants" exclusion, defined to include a "virus," was not limited to "traditional environmental and industrial pollution."   2020 WL 7137110, at *6.

Lindenwood's remaining arguments are equally wrong.   *First*, the argument that the Contamination exclusion is "focused on excluding 'any *cost* due to contamination,' but makes no mention of 'losses'" (AC ¶ 124), misreads the Policy.   The Policy excludes "*Contamination, and any cost due to Contamination including the inability to use or occupy property*."   Policy 26, 33 (emphasis added).   *Second*, Lindenwood's argument that "if the Policy purports to exclude a particular cause of physical loss or damage to property, then the Policy recognizes the risk (or peril) that is purportedly excluded otherwise triggers coverage" (AC ¶ 94) is misguided. Exclusions do not expand or create coverage that is otherwise unavailable under the coverage clause.   *See Selane*, 2021 WL 609257, at *4 ("That the Policy excludes damages triggered by disease-causing 'organisms or microorganisms' does not mean that inanimate viruses are automatically covered by the Policy.").   *Third*, it is irrelevant that the Insurance Services Office ("ISO") submitted a "viruses and bacteria" exclusion to state insurance regulators.   *See* AC ¶¶ 127-

---

[20]   To conclude otherwise would be "akin to arguing that a coverage exclusion for damage caused by fire does not apply to damage caused by a very large fire."   *W. Coast Hotel*, 2020 WL 6440037, at *6; *see also Boxed Foods Co. v. Cal. Cap. Ins. Co.*, 2020 WL 6271021, at *5 (N.D. Cal. Oct. 26, 2020) ("[T]he Virus Exclusion is only subject to one reasonable interpretation: that coverage does not extend to any claim premised on virus-induced damage, regardless of the virus's magnitude.").

129.  The Contamination exclusion in the Policy is not an ISO exclusion.  *See Robert E. Levy*, 2021 WL 598818, at *6 (holding the insurer's decision to draft its own virus exclusion instead of using ISO's exclusion "does not mean that the exclusion at issue is ambiguous").

This Court should join the scores of federal courts that have "nearly unanimously found the plain language of the virus exclusion at issue unambiguous and that losses caused by COVID-19 related shutdowns fall within the exclusion," and dismiss the complaint with prejudice.  *Robert E. Levy*, 2021 WL 598818, at *5.[21]

### D.  The Louisiana Endorsement Does Not Apply To Lindenwood's Covered Properties in Missouri and Illinois.

No doubt understanding the dispositive nature of the Contamination exclusion, Lindenwood seeks refuge in a *Louisiana*-specific endorsement—one of 31 state-specific amendatory endorsements attached to the Policy—which Lindenwood claims modifies the exclusion by "remov[ing], in relevant part, 'virus' and 'disease causing or illness causing agent'" from the Contamination exclusion.  AC ¶¶ 118-21; Policy 95-169.  Lindenwood makes this argument even though its insured properties are located *only* in Missouri and Illinois.  *See* AC ¶ 21.

Under the McCarran-Ferguson Act, the federal government expressly cedes to the individual states the power to regulate "[t]he business of insurance, and every person engaged therein."  15 U.S.C. § 1012.  States heavily regulate property insurance and often impose specific requirements for policies covering risks to property within their states, and those requirements vary state-by-state.  *See, e.g.,* Mo. Code Regs. 20 § 500-1.100 (setting requirements for fire-insurance policies "insuring property located in this state"); La. Rev. Stat. § 22:1311 (same).  Insurance policies address state-specific requirements in state-specific endorsements.

---

[21]      *See also* Pollock Decl. Ex. 18 (collecting 93 cases dismissing based on a virus exclusion).

Recognizing this, courts have concluded that state-specific endorsements do not apply to property outside the respective state—and this principle has been specifically applied with respect to a Louisiana endorsement. *Menard v. Gibson Applied Tech. & Eng'g, Inc.,* 2017 WL 6610466, at *3 (E.D. La. Dec. 27, 2017) (refusing to expand the scope of a Louisiana endorsement "to the benefit of individuals like [the claimant] who are injured outside the state"); *see also Am. Int'l Spec. Lines Ins. Co. v. Cont'l Cas. Ins. Co.*, 142 Cal. App. 4th 1342, 1362 (2006) (refusing to apply a "Utah Changes endorsement" in California because "references to specific places" "connote changes that are specific to those places").[22]  In each case, the court held the *only* way to reconcile the multiple state endorsements attached to a given policy covering multi-state risks was to apply each state's endorsement *only* to risks in the particular state.  This approach is consistent with Missouri law, which requires courts to examine "the policy as a whole" (*Mendota*, 456 S.W.3d at 904) and to "ascertain" and "then give effect" to the parties' intent (*Black & Veatch Corp. v. Wellington Syndicate*, 302 S.W.3d 114, 123 (Mo. Ct. App. 2009)).

The intent behind the state-specific endorsements is confirmed by their language.  Under Lindenwood's theory, 29 state-specific endorsements that, like the Louisiana endorsement, do not explicitly state that they apply only within a particular state also would apply to its covered properties.  *See* Policy 95-169.  Yet that would be impossible, because several of those state-specific endorsements conflict with each other.[23]  And it is, of course, unreasonable to conclude

---

[22]     *See also Tomars v. United Fin. Cas. Co.*, 2015 WL 3772024, at *3 (D. Minn. June 17, 2015) (a policy may "include a series of state-specific endorsements conforming its coverages to the requirements imposed by the insurance laws of the states in which particular [insured property is] located"); *Kamp v. Empire Fire & Marine Ins. Co.*, 2013 WL 310357, at *4-5 (D.S.C. Jan. 25, 2013) (acknowledging the main coverage form excluded coverage and state-specific endorsements added coverage when and to the extent required by an individual state).

[23]     For example, the Nebraska and West Virginia forms modify the Appraisal Provision, while Louisiana deletes the provision entirely.  *Compare* Policy 61 (¶ 6.13.05), *with id.* at 144 (Neb. Endorsement ¶ 3), *id.* at 166 (W. Va. Endorsement ¶ 1), *and id.* at 122 (La. Endorsement ¶ 6).

that the parties intended to inject a host of conflicting provisions into their policy.  *See Transit Cas. Co. v. Selective Ins. Co. of Se.*, 137 F.3d 540, 545 (8th Cir. 1998).  Moreover, other state-specific endorsements use identical terms, and Lindenwood's theory would impermissibly render these terms redundant.[24]  *See Trs. of Clayton Terrace Subdivision v. 6 Clayton Terrace, LLC*, 585 S.W.3d 269, 280 (Mo. 2019).  Because it would be impossible for several state-specific endorsements to apply to Lindenwood's covered property, the only *reasonable* interpretation is that each state-specific endorsement is applicable only to property within that state.  Thus, the Louisiana endorsement does *not* apply to Lindenwood's covered property.

That interpretation also is compelled by the bedrock constitutional principle—grounded in the Commerce, Due Process, and Full Faith and Credit Clauses—that states may not regulate conduct outside their borders.  *See, e.g.*, *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 571-72 (1996) (citing cases).  As the U.S. Supreme Court explained sixty years ago, "it is clear that Congress viewed state regulation of insurance solely in terms of regulation by the law of the State where occurred the activity sought to be regulated.  There was no indication of any thought that a State could regulate activities carried on beyond its own borders."  *FTC v. Travelers Health Ass'n*, 362 U.S. 293, 300 (1960).  So too here; the State of Louisiana cannot reach into the State of Missouri to regulate insurance policies issued to Missouri insureds like Lindenwood.

## II.     Lindenwood's "Declaratory Judgment" Claim Must Be Dismissed.

"Dismissal of a claim for declaratory relief is appropriate where adjudication of a breach of contract claim would render the request for declaratory judgment moot or redundant."  *NTD I, LLC v. Alliant Asset Mgmt. Co.*, 2017 WL 605324, at *7 (E.D. Mo. Feb. 15, 2017).  Here, the Court would make the same determinations in adjudicating Lindenwood's breach-of-contract

---

[24]     For example, the Louisiana and Georgia forms make identical modifications to Section VI.  *Compare* Policy 122 (La. Endorsement ¶ 8), *with id.* at 111 (Ga. Endorsement ¶ 1).

claim as it would make to adjudicate the declaratory-judgment claim—that is, whether "the respective rights and duties of the parties under the Policy and whether the Policy provides coverage for [its] claim[.]" AC ¶ 148. Accordingly, the latter claim should be dismissed.

## III. Plaintiffs' Claims Should Be Dismissed With Prejudice.

The Court should dismiss with prejudice because "[n]o amount of artful pleading … can state a plausible claim[.]" *Pappy's*, 2020 WL 5847570, at *1; *Ballas*, 2021 WL 37984, at *6 (dismissing COVID-19 property insurance case with prejudice). Lindenwood already has amended its complaint once, but will never be able to state a claim under any of the coverage provisions it invokes because it cannot avoid the legal conclusion that the virus does not cause "physical loss" or "physical damage" to property. It also cannot allege facts to overcome the Contamination exclusion's bar on coverage of losses due to the "actual presence" of a virus. Nor could Lindenwood ever allege entitlement to Civil Authority coverage because the relevant government orders did not "result" from a civil authority's "*response* to direct physical loss of or damage to property" and did not "prohibit" access to Lindenwood's property. Accordingly, its Amended Complaint should be dismissed with prejudice.

## CONCLUSION

The Court should dismiss the Amended Complaint with prejudice.

Dated: March 8, 2021

By: */s/ Bronwyn F. Pollock*
Bronwyn F. Pollock

Bronwyn F. Pollock (*pro hac vice*)
Douglas A. Smith (*pro hac vice*)
MAYER BROWN LLP
350 South Grand Avenue, 25th Floor
Los Angeles, California 90071-1503
Telephone: (213) 229-9500
Facsimile: (213) 625-0248
bpollock@mayerbrown.com
dougsmith@mayerbrown.com

Evan T. Tager (*pro hac vice*)
Archis A. Parasharami (*pro hac vice*)
MAYER BROWN LLP
1999 K Street, NW
Washington, DC  20006-1101
Telephone: (202) 263-3000
Facsimile: (202) 263-3300
etager@mayerbrown.com
aparasharami@mayerbrown.com

Debra Bogo-Ernst (*pro hac vice*)
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL  60606-4637
Telephone: (312) 782-0600
Facsimile: (312) 701-7711
dernst@mayerbrown.com

Patrick Florian Hofer (*pro hac vice*)
Gabriela Richeimer (*pro hac vice*)
CLYDE & CO US LLP
1775 Pennsylvania Avenue NW, 4th Floor
Washington, DC 20011
Telephone: (202) 747-5100
Facsimile: (202) 747-5150
patrick.hofer@clydeco.us
gabriela.richeimer@clydeco.us

Timothy J. Wolf, # 53099 (MO)
800 Market Street, Suite 1100
St. Louis, Missouri  63101-2501
(314) 421-3400 Telephone
(314) 421-3128 Facsimile
twolf@bjpc.com

*Attorneys for Defendant Zurich American
Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on March 8, 2021, the foregoing was filed electronically with the Clerk

of the Court to be served by operation of the Court's electronic filing system to the following:

Patrick J. Stueve
Todd M. McGuire
Bradley T. Wilders
Curtis Shank
Abby E. McClellan
STUEVE SIEGEL HANSON LLP
460 Nichols Road, Suite 200
Kansas City, MO  64112
Telephone:     (816) 714-7100
Facsimile:     (816) 714-7101
stueve@stuevesiegel.com
mcguire@stuevesiegel.com
wilders@stuevesiegel.com
shank@stuevesiegel.com
mcclellan@stuevesiegel.com

John J. Schirger
Matthew W. Lytle
Joseph M. Feierabend
MILLER SCHIRGER LLC
4520 Main Street, Suite 1570
Kansas City, MO  64111
Telephone:     (816) 561-6500
Facsimile:     (816) 561-6501
jschirger@millerschirger.com
mlytle@millerschirger.com
jfeierabend@millerschirger.com

J. Kent Emison
LANGDON & EMISON LLC
911 Main Street
PO Box 220
Lexington, MO  64067
Telephone:     (660) 259-6175
Facsimile:     (660) 259-4571
kent@lelaw.com

Richard F. Lombardo
SHAFFER LOMBARDO SHURIN, P.C.
2001 Wyandotte Street

30

Kansas City, MO  64108
Telephone:     (816) 931-0500
Facsimile:      (816) 931-5775
rlombardo@sls-law.com

                              /s/  *Bronwyn F. Pollock*
                              Bronwyn F. Pollock