**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| LINDENWOOD FEMALE COLLEGE d/b/a LINDENWOOD UNIVERSITY, individually and on behalf of all others similarly situated, ) ) ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) | Case No. 4:20CV1503 HEA |
| ZURICH AMERICAN INSURANCE COMPANY, ) ) ) ) | |
| Defendant. ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion to Dismiss, [Doc. No. 37]. Plaintiff opposes the Motion. For the reasons set forth below, the Motion will be granted.

### Facts and Background

This case is one of the many cases involving insurance coverage for certain economic losses and ill effects to businesses attributable to the COVID-19 pandemic. Plaintiff is a private liberal arts college with its main campus in St. Charles, Missouri. It also has a second campus in Belleville, Illinois. Plaintiff brings this action on behalf of itself, two putative nationwide classes and two subclasses. Plaintiff's First Amended Class Action Complaint alleges causes of action for breach of contract and declaratory judgment.

Plaintiff purchased a business insurance policy from Defendant which insured against "direct physical loss of or damage caused by a Covered Cause of Loss to Covered Property[.] Covered Cause of Loss is defined as "[a]ll risks of direct physical loss of or damage from any cause unless excluded."

Plaintiff alleges that in March of 2020, it closed its dorms and sent students home; shuttered all dining halls; closed administrative buildings; cancelled spring sports seasons; and took many other precautions as a result of the COVID pandemic. Revenue producing summer events were also cancelled.

Plaintiff submitted claims for "direct physical loss of or damage to property and resulting business interruption and other covered losses and damage attributable to the presence of the Coronavirus and the COVID-19 pandemic. Plaintiff alleges Defendants conducted no investigation with respect to Plaintiff's claim. Further, Plaintiff claims Defendant has refused to pay Plaintiffs though Plaintiffs experienced a "physical loss of" their insured properties due to the COVID-19 pandemic.

Plaintiff brought this action against Defendant insurer under the policy. The Complaint sets forth two counts: declaratory judgment and breach of contract on behalf of itself and on behalf of a class of similarly situated institutions of higher education. Plaintiff claims the policy issued by Defendant provides several different types of coverages triggered by Plaintiff's claim for losses and damage

2

attributable to the Coronavirus and the COVID-19 pandemic: Section III-Property Damage:  Plaintiff claims the presence of the Coronavirus and COVID-19 at its insured locations and within 1,00 feet thereof has caused and continues to cause direct physical loss of or damage to property; Section IV-Time Element: the policy covers Time Element loss resulting from the necessary suspension of Plaintiff's business activities at an insured location.  The suspension must be due to direct physical loss of or damage to property caused by a covered cause of loss at the location. Plaintiff claims its business interruption losses are covered; and Section V-Special Coverages:  Civil or Military Authority coverage for the actual time element loss sustained by the insured resulting from the necessary suspension of Plaintiff's business activities at an insured location if the suspension is caused by order of civil or military authority that prohibits access to the location. The order must result from a civil authority's response to direct physical loss of or damage caused by a covered cause of loss to property not owned, occupied, leased, or rented by the insured or insured under the policy and located within the distance of the insured's location.

     Defendants have moved to dismiss under Fed.R.Civ.P. 12(b)(6), arguing the Complaint fails to state a claim upon which relief can be granted.

## Standard of Review

Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.Civ.P. 8(a)(2). If a pleading fails to state a claim upon which relief can be granted, an opposing party may move to dismiss it. *See* Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). The factual content of the plaintiff's allegations must "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Cole v. Homier Distrib. Co.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). If a claim fails to allege one of the elements necessary to recovery on a legal theory, that claim must be dismissed for failure to state a claim upon which relief can be granted. *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011).

When ruling on a motion to dismiss, the Court "must liberally construe a complaint in favor of the plaintiff," *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010), and must grant all reasonable inferences in its favor, *Lustgraaf v. Behrens*, 619 F.3d 867, 872–73 (8th Cir. 2010). Although courts must accept all factual allegations as true, they are not bound to take as true "a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007) (internal quotations and citation omitted); *Iqbal*, 556 U.S. at 677–78. Indeed, "[c]ourts should dismiss complaints based on 'labels and conclusions, and a formulaic recitation of the elements of a cause of action.' " *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013) (quoting *Twombly*, 550 U.S. at 555).

## Discussion

This Policy Insures against direct physical loss of or damage caused by a Covered Cause of Loss to Covered Property, at an Insured Location described in Section II-2.01, all subject to the terms, conditions and exclusions stated in this Policy.

COVERED PROPERTY

This Policy insures the following property, unless otherwise excluded elsewhere in this Policy, located at an Insured Location or within 1,000 feet thereof or as otherwise provided for in this Policy.
3.01.01. The Insured's interest in buildings (or structures) including new construction, additions, alterations, and repairs that the Insured owns, occupies, leases or rents.

3.01.02. The Insured's interest in Personal Property, including Improvements and Betterments.

3.01.03. Property of Others will not extend any Time Element Coverage provided under this Policy to the owner of the property and is limited to property:

3.01.03.01. In the Insured's care, custody or control;

3.01.03.02. In which the Insured has an insurable interest or obligation;

3.01.03.03. For which the Insured is legally liable; or

3.01.03.04. For which the Insured has agreed in writing prior to any loss or damage to provide coverage.

3.01.04. Personal Property of officers and employees of the Insured

The following exclusions apply unless specifically stated elsewhere in this Policy:

3.03.01. This Policy excludes the following unless it results from direct physical loss or damage not excluded by this Policy.

3.03.01.01. Contamination, and any cost due to Contamination including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy, except as provided by the Radioactive Contamination Coverage of this Policy.

LOSS INSURED
4.01.01. The Company will pay for the actual Time Element loss the Insured sustains, as provided in the Time Element Coverages, during the Period of Liability. The Time Element loss must result from the necessary Suspension of the Insured's business activities at an Insured Location. The Suspension must be due to direct physical loss of or damage to Property (of the type insurable under this Policy other than Finished Stock) caused by a Covered Cause of Loss at the Location, or as provided in Off Premises Storage for Property Under Construction Coverages.

The Company will also pay for the actual Time Element loss sustained by the Insured, during the Period of Liability at other Insured Locations. The Time Element loss must result from the necessary Suspension of the Insured's business activities at the other Insured Locations. Such other Location must depend on the continuation of business activities at the Location that sustained direct physical loss or damage caused by a Covered Cause of Loss.

4.01.02. There is recovery only to the extent that the Insured is:

4.01.02.01. unable to make up lost production within a reasonable period of time not limited to the period during which production is Suspended;

6

4.01.02.02. unable to continue such operations or services during the Period of Liability; and

4.01.02.03. able to demonstrate a loss of revenue for the operations, services or production Suspended.

4.01.03. The Company insures Time Element loss only to the extent it cannot be reduced by:

4.01.03.01. The Insured resuming business activities in whole or part;

4.01.03.02. Using damaged or undamaged property (including Raw Stock, Stock in Process or Finished Stock) at the Insured Location or elsewhere;

4.01.03.03. Using the services or property of others;

4.01.03.04. Working extra time or overtime; or

4.01.03.05. The use of other Locations not covered under this Policy.

4.01.03.06. Any amount recovered under property damage coverage at selling price for loss or damage to Merchandise.

4.01.04. The Company will include in any calculation the combined operating results of all Insured Locations in determining the Time Element loss.

4.01.05. In determining the Time Element loss, the Company will evaluate the experience of the business before and after the loss or damage and the probable experience had no direct physical loss or damage occurred at an Insured Location during the Period of Liability.

CIVIL OR MILITARY AUTHORITY
The Company will pay for the actual Time Element loss sustained by the Insured, as provided by this Policy, resulting from the necessary Suspension of the Insured's business activities at an Insured Location if the Suspension is caused by order of civil or military authority that prohibits
access to the Location. That order must result from a civil authority's response to direct physical loss of or damage caused by a Covered Cause of Loss to property not owned, occupied, leased or rented by the Insured or

insured under this Policy and located within the distance of the Insured's Location as stated in the Declarations. The Company will pay for the actual Time Element loss sustained, subject to the deductible provisions that would have applied had the physical loss or damage occurred at the Insured Location, during the time the order remains in effect, but not to exceed the number of consecutive days following such order as stated in the Declarations up to the limit applying to this Coverage.

Contamination(Contaminated) - Any condition of property due to the actual presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent, Fungus, mold or mildew.

Amendatory Endorsement - Louisiana.

10. SECTION II – DECLARATIONS, Time Specifications, is deleted in its entirety and replaced by the following:
2.03.10. Time Specifications: As follows:
11. The following is deleted from SECTION VII - DEFINITIONS
Contamination(Contaminated) - Any condition of property due to the actual presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent, Fungus, mold or mildew.

Plaintiff alleges that it had a physical loss of its insured properties arising from the COVID-19 pandemic. It argues that it "suffered a 'loss of' its properties when it was unable to physically use them as intended for classes, dorms, etc.

**Contract Claims**

Plaintiff argues that it alleges in its First Amended Complaint that it sustained economic losses (including lost revenues and added expenses) as a result of the Coronavirus, the disease it causes (COVID-19) and the physical loss of and damage to property that they cause, and the accompanying governmental closure

8

orders. It urges denial of the motion because it contends its First Amended Complaint alleges in considerable detail how the presence of the Coronavirus on its campus caused it to experience both direct physical loss and damage to property. Further, Plaintiff argues that the Policy is unique and quite unlike the policies considered by other courts in that it expressly contemplates "virus" as a Covered Cause of Loss, which propels its claim that coverage was triggered beyond the plausibility standard necessary to survive a motion to dismiss. It reasons that because the Policy's "Contamination" exclusion, which Defendant modified by endorsement, is an integral part of its argument that its COVID Losses are covered under the Policy.

Under Missouri law, a court interpreting an insurance policy should "give[ ] the policy language its plain meaning, or the meaning that would be attached by an ordinary purchaser of insurance." *Seaton v. Shelter Mut. Ins. Co.*, 574 S.W.3d 245, 247 (Mo. banc 2019) (quoting *Doe Run Res. Corp. v. Am. Guar. & Liab. Ins.*, 531 S.W.3d 508, 511 (Mo. banc 2017)). In addition, courts "should not interpret policy provisions in isolation but rather evaluate policies as a whole." *Ritchie v. Allied Prop. & Cas. Ins. Co.*, 307 S.W.3d 132, 135 (Mo. banc. 2009). When an insurance policy is "clear and unambiguous," the court must enforce the policy as written. *Seaton*, 574 S.W.3d at 247.

9

Under the plain meaning of the policy language and evaluating the policy as a whole, Plaintiff's decision to modify its classes to virtual classes and send students off campus did not constitute a "direct physical loss of" its property. Nothing physical happened to the property. Rather, there only was a change in circumstances. The coronavirus pandemic, the associated opinions of industry groups, and the public may have caused a modification of the way Plaintiff conducted its business, but the transitory reduction of the properties' functionality, based on no direct physical occurrence, does not amount to a loss of the properties under the plain meaning of the policies.

Initially, the Court finds Plaintiff has not alleged a physical loss of or damage to Plaintiff's property. In line with many other cases before the instant case, the Court concludes that Plaintiff did not plead a "direct physical loss of" its property because it did not plead any "physical alteration of property, or, put another way, a tangible impact that physically alter[ed] property." *Gateway Clippers Holdings LLC v. W. Bend Mut. Ins. Co.,* No. 4:20CV1676 HEA, 2021 WL 3784991, at *3 (E.D. Mo. Aug. 26, 2021), quoting *Zwillo V, Corp. v. Lexington Ins. Co.*, 504 F. Supp. 3d 1034, 1039 (W.D. Mo. 2020), *appeal dismissed*, No. 21-1015, 2021 WL 2792962 (8th Cir. Mar. 18, 2021); *accord Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141, 1144 (8th Cir. 2021) (applying Iowa law and finding no coverage for COVID-19 business losses under policy


language covering suspension of operations "caused by direct 'loss' to property"); *Gilreath Fam. & Cosm. Dentistry, Inc. v. Cincinnati Ins. Co.*, No. 21-11046, 2021 WL 3870697 (11th Cir. Aug. 31, 2021) (per curiam) (Georgia law); *Santo's Italian Cafe LLC v. Acuity Ins. Co.*, — F. 4th —, No. 21-3068, 2021 WL 4304607, at *5 (6th Cir. Sept. 22, 2021) (Ohio law); *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, — F. 4th —, No. 20-16858, 2021 WL 4486509, at *5 (9th Cir. Oct. 1, 2021) (California law).

If the changes in circumstance alone caused by the pandemic qualified as a direct physical loss of the property, then coverage would be "established *whenever* property cannot be used for its intended purpose." *Oral Surgeons*, 2 F.4th at 1144. *See, e.g.*, *Glenn R. Edwards, Inc., et al. v. The Travelers Companies, et al.*, No. 4:20-CV-00877-MTS, 2021 WL 3525168, at *1–5 (E.D. Mo. Aug. 11, 2021) (Plaintiffs did not plead a direct physical loss of or damage to their properties based on coronavirus closures); *Ballas Nails & Spa, LLC v. Travelers Cas. Ins. Co. of Am.*, 511 F. Supp. 3d 978, 982 (E.D. Mo. 2021) ("The complaint does not allege any facts demonstrating that Ballas sustained a 'direct physical loss of or damage to property' resulting from a 'covered cause of loss,' which is required for coverage under the Business Income and Extra Expense provision."); *United Hebrew Congregation of St. Louis v. Selective Ins. Co. of Am.*, No. 4:20-cv-892-HEA, 2021 WL 2823213, at *1, *3 (E.D. Mo. July 7, 2021) (dismissing claims

11

despite argument that *of* in loss of or damage to is critical); *Monday Rests. LLC v. Intrepid Ins. Co.*, No. 4:20-cv-1015-SNLJ, 2021 WL 2222692, at *3 (E.D. Mo. June 2, 2021) ("Plaintiffs have not alleged a 'direct physical loss of or damage to property.'").

Plaintiff next focuses on the "Amendatory Endorsement-Louisiana" to attempt to salvage its claims. Plaintiff argues that the policy's contamination exclusion, as Defendant modified it by policy endorsement, dictates that "virus" is a covered cause of loss. The Amendatory Endorsement – Louisiana removes contamination, specifically, as applicable herein, virus, from the definitions of noncoverage. Thus, Plaintiff argues that the damages caused by the Coronavirus is not excluded from coverage by reason of the amendatory endorsement.

Plaintiffs argue that the Contamination Exclusion applies only to claims made for "costs" as opposed to income "losses" The Court disagrees. The policy provides that the "time Element loss" must be caused by a "Covered Cause of Loss," which is defined as all risks of direct physical loss of or damage from any cause unless excluded. Contamination is excluded. It is clear therefore that the Contamination Exclusion applies to both the Property Damage and Time Element coverages provided for therein. *See OTG Mgmt. PHL LLC v. Emps. Ins. Co. of Wausau*, 2021 WL 3783261, at *5 (D.N.J. Aug. 26, 2021); *Ralph Lauren Corp. v. Factory Mut. Ins. Co.*, No. 20-10167 (SDW) (LDW), 2021 WL 1904739, at *4

12

(D.N.J. May 12, 2021), *appeal filed*, May 26, 2021; *cf. Thor Equities, LLC v. Factory Mut. Ins. Co.*, —— F.3d ——. 2021 WL 1226983, at *4 (S.D.N.Y. Mar. 31, 2021) (denying insurer's motion to dismiss based on nearly identical contamination exclusion but acknowledging that limiting such exclusion's application to "costs of contamination" could "tend to render certain aspects of the exclusion meaningless").

Plaintiff also tries to avoid the consequences of the Contamination Exclusion by arguing that the inclusion of "Louisiana" in the title does not mean that the exclusion only applies to property in Louisiana.  This argument is unfounded.  As Defendant asserts, while titles cannot change the policy, they are there for reference, thus, the inclusion of Louisiana gives reference to the parties to recognize which provisions apply in separate states. Plaintiff has property only in Missouri and Illinois, not Louisiana. If the endorsement applied to Plaintiff, it makes no sense to include Louisiana in the reference title.  This specific amendatory endorsement clearly only applies to property located in Louisiana, as the other Amendatory Endorsements apply only to the specifically referenced states. This, as Defendant rightly acknowledges, only makes sense.  The reference of Louisiana in the title apprises the parties of a specific change in the Policy specifically *for* Louisiana. *See Manhattan Partners, LLC v. Am. Guarantee & Liab. Ins. Co,* 2021 WL 1016113, at *2 (D.N.J. Mar. 17, 2021)("This Court is

unpersuaded by Plaintiffs' argument that the Contagion exclusion has been modified by an endorsement to the Policy which removed the word "virus" and, therefore, is inapplicable here. . . The endorsement to which Plaintiffs refer is titled "Amendatory Endorsement – Louisiana" and appears in a list of state-specific endorsements. . . Had the parties intended to remove 'virus' from the Contamination provision, they could have done so with a general endorsement that was not limited to a single state.")

Likewise, Plaintiff's claim that it is covered under the Civil Authority Coverage fails. Plaintiff's allegations fail to set forth any facts to support its claim that "the coronavirus caused damage to property other than at the described premises and civil authorities prohibited access to those premises. There is no identification of what other properties were damaged, or state how the coronavirus caused damage to the other property.

Since Plaintiff alleged no direct physical loss of its property, it was not entitled to coverage under the policy. Thus, the Court will dismiss Count II, breach of contract as well as Count I, which seeks a declaratory judgment that the Policy's Property Damage, Time Element and Special Coverages are triggered by Plaintiff's claim, that no enforceable exclusion applies, and that Defendant is responsible for fully and timely paying Plaintiff's claim and all the claims of similarly situated

14

institutions of higher education, attributable to the Coronavirus and the COVID-19 pandemic for the reasons set forth herein.,

## Conclusion

For the reasons set forth above, Plaintiff's First Amended Complaint fails to sufficiently plead a cause of action for declaratory judgment and for breach of contract.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, [Doc. No. 37], is **GRANTED**.

**IT IS FURTHER ORDERED** all other pending motions are denied as moot.

**IT IS FURTHER ORDERED** that this matter is **DISMISSED**.

A separate Order of Dismissal will be entered this date.

Dated this 1st day of November, 2021.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE